IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
Case No. 2:20-cv-00026-M

KENISHA GREGORY and HUMBLE )
BEGINNINGS CHILD CARE, INC., )
)
Plaintiffs, )
)
v. )
)
CURRITUCK COUNTY, CURRITUCK ) **OPINION**
COUNTY DEPARTMENT OF SOCIAL ) **AND ORDER**
SERVICES, STATE OF NORTH )
CAROLINA DEPARTMENT OF HEALTH )
AND HUMAN SERVICES, KATHY )
ROMM, CARLA MEBANE, MARJORIE )
WHITE, JAMES MIMS, and BILL )
NEWNS, )
)
Defendants. )

This matter comes before the court on: (1) Defendant Currituck County Department of Social Services's ("CCDSS") motion to dismiss, filed August 24, 2020 [DE-23]; (2) Defendants Currituck County ("CC"), Kathy Romm, Carla Mebane, James Mims, and Bill Newns's motion to dismiss, filed August 24, 2020 [DE-25]; and (3) Defendants State of North Carolina Department of Health and Human Services ("NCDHHS") and Marjorie White's[1] motion to dismiss, filed November 3, 2020 [DE-45].

For the reasons that follow, each of these motions is GRANTED.

---

[1] The complaint erroneously identified NCDHHS and White as "State of North Carolina Health and Human Services" and "Majorie White" within its case caption, while properly naming those Defendants within its body. [*see* DE-1]

1

## I. Background

In 2007, Plaintiff Kenisha Gregory formed Plaintiff Humble Beginnings Child Care, Inc. ("Humble Beginnings"), a child-care provider in Moyock, an unincorporated community within Currituck County, North Carolina. [DE-1 ¶¶ 2–3] Humble Beginnings previously: (1) was licensed to provide child-care services by NCDHHS, the state agency responsible for overseeing child-care providers; and (2) received government subsidies administered by CCDSS for providing services to families otherwise unable to afford such services. [DE-1 ¶¶ 6, 12–19] The natural-person Defendants are alleged to have worked for NCDHHS (White), CC (Mims and Newns), and CCDSS (Romm and Mebane). [DE-1 ¶¶ 7–11]

Humble Beginnings closed in June 2018, allegedly as a result of a conspiracy undertaken by Defendants to harm Gregory because she is an African-American. [DE-1 ¶¶ 12–145] In their complaint, Plaintiffs sue Defendants under the following purported theories of liability: (1) violation of 42 U.S.C. § 1985 (conspiracy to interfere with civil rights); (2) violation of 42 U.S.C. § 1983 (interference with civil rights); (3) tortious interference with employment and related opportunities; (4) negligent retention and supervision; (5) breach of fiduciary duty; (6) unfair and deceptive trade practices (within the meaning of N.C. Gen. Stat. § 75-1.1); (7) "Breach of Contract and Badfaith" (sic); and (8) punitive damages. [DE-1 ¶¶ 146–222] Defendants have moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) (hereinafter, *e.g.*, "Rule 12(b)(6)"), each making a number of arguments as to why the complaint should be dismissed. [*see* DE-23; DE-25; DE-45]

The court will address each motion in turn.

## II.     CCDSS's motion to dismiss

CCDSS moves to dismiss the complaint arguing, *inter alia*, that it is not capable of being sued under North Carolina law. [DE-24 at 9–10]

The Federal Rules of Civil Procedure set forth that, for governmental entities, "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located[.]" Fed. R. Civ. P. 17(b)(3); *see Avery v. County of Burke*, 660 F.2d 111, 113–14 (4th Cir. 1981) ("The capacity of a governmental body to be sued in the federal courts is governed by the law of the state in which the district court is held."). Therefore, because this court is located within North Carolina, the court looks to North Carolina law to determine whether CCDSS can be sued.

Under North Carolina law, counties can sue and be sued. *See* N.C. Gen. Stat. § 153A-11. There is no North Carolina statute that allows a county department to be sued, however, and CCDSS has directed the court's attention to case law from this court holding that the absence of such a statute is fatal to claims brought against North Carolina county departments of social services like CCDSS. *See Powell v. Nash Cnty. Dep't of Soc. Servs.*, No. 5:14-CV-281-FL, 2014 U.S. Dist. LEXIS 112980, at *4 (E.D.N.C. July 21, 2014) (memorandum and recommendation) ("Plaintiff's claims against Nash County DSS must be dismissed given that it is an agency or department of Nash County and does not have the legal capacity to be sued." (citing *Malloy v. Durham Cnty. Dep't of Soc. Servs.*, 58 N.C. App. 61, 293 S.E.2d 285 (1982))), *adopted*, 2014 U.S. Dist. LEXIS 112981, at *3–4 (E.D.N.C. Aug. 14, 2014) ("defendant DSS is not a proper defendant"). Plaintiffs do not invoke meaningful authority holding otherwise in response.[2]

---

[2] Plaintiffs' invocation of *Stratton v. Mecklenburg Cnty. Dep't of Soc. Servs.*, 521 F. App'x 278 (4th Cir. 2013), for the proposition that North Carolina county departments of social services are properly subject to

3

Because they have not, the court concludes that Plaintiffs' claims against CCDSS must be dismissed pursuant to Rule 12(b)(6). *See Cooper v. Brunswick Cnty. Sheriff's Dep't*, No. 7:10-CV-00014-D, 2011 U.S. Dist. LEXIS 17892, at *10 (E.D.N.C. Feb. 7, 2011) (memorandum and recommendation) ("A complaint which states a claim against a defendant that lacks the capacity to be sued will be dismissed for failure to state a claim upon which relief may be granted."), *adopted*, 2011 U.S. Dist. LEXIS 17960, at *2 (E.D.N.C. Feb. 23, 2011).

### III. County Defendants' motion to dismiss

CC, Romm, Mebane, Mims, and Newns (collectively, the "County Defendants") move to dismiss the complaint arguing, *inter alia*, that the applicable statute of limitations bars any claims brought against them. [DE-26 at 13–14]

The court addresses the federal claims first, for reasons that will become evident. When adjudicating claims alleging violations of 42 U.S.C. §§ 1983 and 1985, federal courts apply the statute of limitations for personal-injury claims applicable under the law of the state in which the court is located. *See McCausland v. Mason Cnty. Bd. of Educ.*, 649 F.2d 278, 279 (4th Cir. 1981) ("We have consistently held, however, that the Reconstruction Civil Rights Acts create causes of action where there has been injury, under color of state law, to the person or to the constitutional or federal statutory rights which emanate from or are guaranteed to the person. As a consequence it is to the state statute of limitations for personal injuries to which we usually look in determining

---

suit in federal court is misguided. In *Stratton*, the Fourth Circuit affirmed a district-court judgment dismissing a suit brought against thirty defendants, including the Mecklenburg County, North Carolina Department of Social Services, for lack of federal subject-matter jurisdiction. 521 F. App'x at 292; *Stratton v. Mecklenburg Cnty. Dep't of Soc. Servs.*, Civil Action No. 3:10-137-DCN-KM, 2011 U.S. Dist. LEXIS 108106, at *8–15 (W.D.N.C. Aug. 5, 2011) (memorandum and recommendation), *adopted*, 2011 U.S. Dist. LEXIS 108079, at *3–4 (W.D.N.C. Sept. 16, 2011). Plaintiffs' interpretation of *Stratton* as "deciding a claim against [a county department of social services] on the merits" [DE-35 at 4] is therefore simply incorrect, since neither the district court nor the appellate court reached the merits of the *Stratton* plaintiff's claims.

4

when claims are time-barred." (internal quotation marks and citations omitted)); *Saleh v. Virginia State Univ.*, Civil Action No. 3:97cv460, 1999 U.S. Dist. LEXIS 21842, at *67 (E.D. Va. Feb. 25, 1999) ("Claims under [42 U.S.C.] § 1985(3), like those filed pursuant to [42 U.S.C.] § 1983, are subject to the state statute of limitations for personal injury actions."). Therefore, because this court is located within North Carolina, the court looks to North Carolina's statute of limitations for personal-injury claims to determine the limitations period applicable to Plaintiffs' 42 U.S.C. §§ 1983 and 1985 civil-rights claims.

Under North Carolina law, a personal-injury claim must be brought within three years of the date the claim accrued. N.C. Gen. Stat. § 1-52(16). Accordingly, because Plaintiffs' complaint was filed on May 2, 2020, Plaintiffs' civil-rights claims must have accrued on or after May 2, 2017, or else the claims fail as a matter of law.

Regarding accrual, the Fourth Circuit has said:

> Although the applicable state statute of limitations supplies the length of the limitations period in a [42 U.S.C.] § 1983 action, the time of accrual of the cause of action is a matter of federal law. Under federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action.

*Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996) (internal quotation marks and citations omitted). The harm with which 42 U.S.C. § 1983 is concerned is the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws," and the harm with which 42 U.S.C. § 1985(3)[3] is concerned is the "depriv[ation] . . . of the equal protection of the laws, or of equal privileges and immunities under the laws[.]" The harms claimed by Plaintiffs in their

---

[3] Plaintiffs quote 42 U.S.C. § 1985(3) specifically within the complaint's 42 U.S.C. § 1985 claim. [DE-1 ¶ 147]

5

civil-rights claims are the denials of various purported rights caused by Defendants' alleged racial discrimination.[4] [DE-1 ¶¶ 146–81] Plaintiffs' civil-rights claims against the County Defendants accordingly accrued when Plaintiffs possessed[5] sufficient facts about the County Defendants' alleged racial discrimination, which would have revealed Plaintiffs' civil-rights claims[6] within the meaning of *Brooks*.

Before getting into timing, the court first addresses an important threshold consideration regarding how the alleged discrimination must be attributed. Romm, Mebane, Mims, and Newns were each sued in their official capacities [DE-1 ¶¶ 7–11 (*e.g.*: "At all times relevant hereto, Defendant KATHY ROMM . . . was acting under color of state in her capacity as the Director of Currituck County Department of Social Service" (sic))], and claims brought against government officials in their official capacities are claims against the government entity the officials serve, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice

---

[4] Plaintiffs also conclusorily allege that Defendants discriminated against them on the basis of Gregory's gender [*e.g.*, DE-1 ¶ 154], but such allegations are unsupported by any factual allegations and are therefore insufficient to withstand Defendants' Rule 12(b)(6) motions to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

[5] The court imputes Gregory's knowledge to Humble Beginnings for purposes of the *Brooks* inquiry. *See Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co.*, 381 F.2d 245, 250 (4th Cir. 1967) ("Ordinarily knowledge of officers and directors having substantial control of all activities of a corporation is imputed to the corporation."); [DE-1 ¶ 22 (alleging that "Humble Beginnings was owned and operated by Plaintiff Gregory")].

[6] The court questions whether Humble Beginnings has standing to bring federal civil-rights claims based upon alleged racial discrimination in the first place, for the simple reason that Humble Beginnings, as a corporate entity, has no race against which any person can discriminate. But the court's independent research indicates that corporations may be able to bring federal civil-rights claims in certain circumstances, *see Grimm v. Borough of Norristown*, 226 F. Supp. 2d 606, 633 (E.D. Pa. 2002) (collecting cases), no Defendants have raised this issue in their briefing, and resolution of the issue does not change any of the court's conclusions. The court accordingly assumes, without deciding, that Humble Beginnings has standing to bring its 42 U.S.C. §§ 1983 and 1985(3) claims.

6

and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Accordingly: (1) Plaintiffs' claims against Mims and Newns, who are alleged to be CC officials [DE-1 ¶¶ 10–11], are claims against CC; and (2) Plaintiffs' claims against Romm and Mebane, who are alleged to be CCDSS officials [DE-1 ¶¶ 7–8], are claims against CCDSS and, by extension, CC, since a government entity's department is not legally distinct from the government entity of which it is part. *See Avery*, 660 F.2d at 114 ("Neither the Board of Health nor the Board of Social Services is a legal entity separate and apart from the county. Both boards are created by, and are extensions of, the county. Consequently, if Avery is entitled to recover damages under [42 U.S.C.] § 1983 because of the boards' conduct, the county would be liable." (citations omitted)). Plaintiffs' civil-rights claims against the County Defendants are therefore claims against CC, and the question to be analyzed is when Plaintiffs possessed sufficient facts regarding CC's alleged racial discrimination.

The complaint alleges that Gregory was aware that CC had discriminated against Plaintiffs on the basis of Gregory's race on multiple occasions before May 2017. For example, Mims and Newns allegedly dragged their feet in approving Gregory's proposed facility for an after-school center for older children and a subsidized summer-camp program to be operated at the facility in 2014, and Plaintiffs allege that the facility was approved in 2015. [DE-1 ¶¶ 83–97] Gregory allegedly reported this discrimination to CC, demonstrating her awareness of the alleged harms. [DE-1 ¶ 115] Plaintiffs also allege that CCDSS "diverted over $18,000 from Plaintiffs, absent notice, hearing or opportunity to be heard[,]" and that Gregory reported this "diversion of her profits" in February 2015. [DE-1 ¶¶ 111–12] And Plaintiffs also allege that "Romm and Mebane . . . retaliated against Plaintiffs [for filing complaints claiming racial discrimination] by interfering with the number of children enrolled at" Humble Beginnings and that according to a social

7

worker's testimony, "upper management" told her office on January 20, 2017 to "put subsidy children in another facility because Humble Beginnings . . . would be shut down[.]" [DE-1 ¶¶ 70, 170, 173] The court concludes that these allegations demonstrate that Plaintiffs "possesse[d] sufficient facts about the harm done to [them] that reasonable inquiry [would have] reveal[ed their] cause of action" against CC within the meaning of *Brooks* prior to May 2017, and that Plaintiffs' civil-rights claims thus accrued before the cutoff date for the three-year statute-of-limitations period provided by N.C. Gen. Stat. § 1-52(16). Plaintiffs' federal civil-rights claims against the County Defendants are therefore time-barred and must be dismissed pursuant to Rule 12(b)(6). *Brooks*, 85 F.3d at 181; *see Blanck v. McKeen*, 707 F.2d 817, 820 (4th Cir. 1983) ("It is not necessary that appellants knew, in 1976, all of the persons involved in, or all of the details of, appellees' alleged torts. Appellants' action is time-barred as long as they were 'on notice' of the conduct about which they complain.").

Seeking to avoid this conclusion, Plaintiffs argue that the County Defendants' discriminatory acts formed part of a conspiracy with NCDHHS and White (the "State Defendants") and that, because certain of the State Defendants' alleged discriminatory acts took place after May 2017, the County Defendants' acts constitute part of a continuing violation for which they can still be held liable. [*see* DE-34 at 5] But the Supreme Court has said in the civil-rights context that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *AMTRAK v. Morgan*, 536 U.S. 101, 113 (2002); *see Compton v. Ide*, 732 F.2d 1429, 1432–33 (9th Cir. 1984) ("To establish a continuing violation [under 42 U.S.C. § 1983], continued unlawful acts must be demonstrated. . . . The existence of a conspiracy does not generally postpone accrual of causes of action arising from the conspirators' separate

8

wrongs."). Moreover, the purported conspiracy between the County Defendants and the State Defendants is alleged in an impermissibly-conclusory manner. *See A Soc'y Without a Name, for People without a Home, Millennium Future-Present v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) ("where a conspiracy is alleged, the plaintiff must plead facts amounting to more than 'parallel conduct and a bare assertion of conspiracy . . . . Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.'" (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 566–67 (2007))). The court therefore concludes that the continuing-violation doctrine does not resurrect Plaintiffs' civil-rights claims against the County Defendants.

Because: (1) the court concludes that Plaintiffs' federal civil-rights claims must be dismissed; (2) the court concludes, as explained *infra*, that Plaintiffs' claims against the State Defendants must also be dismissed; and (3) Plaintiffs and the County Defendants lack diversity of citizenship within the meaning of 28 U.S.C. § 1332, the court exercises its discretion under 28 U.S.C. § 1367(c) to decline supplemental jurisdiction over the remaining state-law claims against the County Defendants. *See Artis v. District of Columbia*, 138 S. Ct. 594, 597–98 (2018) ("When district courts dismiss all claims independently qualifying for the exercise of federal jurisdiction, they ordinarily dismiss as well all related state claims."); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). The court also dismisses Plaintiffs' purported claim seeking punitive damages from the County Defendants pursuant to Rule 12(b)(6), because "[p]unitive damages are not a cause of action[.]" *Cloaninger*

9

*v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009) (citing *Hawkins v. Hawkins*, 101 N.C. App. 529, 400 S.E.2d 472 (1991)).

Finally, the court notes that the County Defendants have also raised what appear to be meritorious arguments concerning: (1) the County Defendants' immunity from suit; and (2) Plaintiffs' failure to allege facts rendering their various theories plausible within the meaning of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). [*see generally* DE-26] But given the court's rulings that Plaintiffs' claims against the County Defendants are otherwise subject to dismissal, analyses of these arguments are unnecessary.

### IV. State Defendants' motion to dismiss

NCDHHS and White move to dismiss the complaint arguing, *inter alia*, that they are insulated from liability by the Eleventh Amendment to the United States Constitution. [DE-46 at 6–9]

The Eleventh Amendment sets forth as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. Although the Eleventh Amendment does not expressly preempt federal courts from exercising jurisdiction over lawsuits brought against a state by its own citizens, the Supreme Court "has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well[.]" *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974).

Of course, Plaintiffs have not expressly sued the State of North Carolina. But the Supreme Court has made clear that a state's Eleventh Amendment immunity extends to claims brought in federal court against "state agents and state instrumentalities[,]" or "arm[s] of the State." *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429, 431 (1997). Regarding NCDHHS, this

10

court has previously held that NCDHHS is entitled to Eleventh Amendment immunity under an arm-of-the-state analysis. *See Myers v. State*, No. 5:12-CV-714-D, 2013 U.S. Dist. LEXIS 116324, at *11–12 (E.D.N.C. Aug. 16, 2013) (granting motion to dismiss 42 U.S.C. § 1983 claims brought against NCDHHS and state officials in their official capacities on Eleventh Amendment grounds). And regarding White, Plaintiffs sued White in her official capacity [*see* DE-1 ¶ 9 ("At all times relevant hereto, Defendant MARJORIE WHITE . . . was acting under color of state in her capacity as the Licensing Consultant of North Carolina Department of Social Service" (sic))], and the Supreme Court has said that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . it is no different from a suit against the State itself[,]" *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The court accordingly concludes that, by suing NCDHHS and White in her official capacity, Plaintiffs have sued the State of North Carolina for purposes of the Eleventh Amendment.

Having established that the Eleventh Amendment can immunize the State Defendants, the court moves on to whether the amendment defeats the specific claims Plaintiffs brought against the State Defendants, and again addresses the federal claims first. Because Plaintiffs have effectively sued the State of North Carolina in federal court for money damages, Eleventh Amendment immunity defeats Plaintiffs' federal civil-rights claims unless they demonstrate that, with respect to the specific claims: (1) North Carolina has waived the immunity by consenting to suit in federal court; or (2) Congress has abrogated the immunity.[7] *See College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). Plaintiffs do not

---

[7] Plaintiffs do not request declaratory or injunctive relief regarding future constitutional violations here, and the exception described within *Ex parte Young*, 209 U.S. 123 (1908) is therefore inapplicable.

11

argue that North Carolina has waived its Eleventh Amendment immunity from having to defend against federal civil-rights claims, but they argue that Congress abrogated the states' Eleventh Amendment immunity from 42 U.S.C. §§ 1983 and 1985 claims by enacting the same. [*see* DE-49 at 4]

The Supreme Court's decision in *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989), holds to the contrary. In *Will*, the Court said:

> [42 U.S.C. §] 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

491 U.S. at 66 (citations omitted). The *Will* Court made clear that Congress did not abrogate the states' Eleventh Amendment immunity by enacting 42 U.S.C. § 1983, concluding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."[8] *Id.* at 71. And federal appellate courts have extrapolated *Will*'s holding to 42 U.S.C. § 1985. *See Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005) ("Small cannot assert a [42 U.S.C.] § 1983 action against [the Illinois Department of Commerce and Community Affairs], for the simple reason that, as part of the State of Illinois, it is not a 'person' within the meaning of § 1983. Any possible claim under

---

[8] As noted by the *Will* Court, the question of whether the states are "persons" within the meaning of 42 U.S.C. § 1983 is analytically distinct from the question of the scope of the Eleventh Amendment. 491 U.S. at 66–67 ("This does not mean, as petitioner suggests, that we think that the scope of the Eleventh Amendment and the scope of [42 U.S.C.] § 1983 are not separate issues. Certainly they are. But in deciphering congressional intent as to the scope of § 1983, the scope of the Eleventh Amendment is a consideration, and we decline to adopt a reading of § 1983 that disregards it."). While *Will* also entitles the State Defendants to dismissal of Plaintiffs' 42 U.S.C. § 1983 claims on statutory grounds, the fact that *Will* answered the statutory-interpretation question as it did also means that Section 1983 did not effect a Congressional abrogation of the states' Eleventh Amendment immunity. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 483 (4th Cir. 2005) ("the statutory question is virtually identical to the Eleventh Amendment question").

12

[42 U.S.C.] § 1985 is doomed for the same reason." (citing *Will* and *Omosegbon v. Wells*, 335 F.3d 668 (7th Cir. 2003))); *see also Kunkle v. Naugle*, 660 F. App'x 132, 135–36 (3d Cir. 2016) (unpublished); *Cuevas v. Dep't of Homeland Sec.*, 233 F. App'x 642, 643 (9th Cir. 2007) (unpublished); *Scaglione v. Mamaroneck Union Free Sch. Dist.*, 47 F. App'x 17, 18 (2d Cir. 2002) (unpublished). Following these cases, the court concludes that Plaintiffs' federal civil-rights claims against NCDHHS and White are barred by the Eleventh Amendment and must be dismissed pursuant to Rule 12(b)(1). *See Carpenters Pension Fund v. Maryland Dep't of Health & Mental Hygiene*, 721 F.3d 217, 223 (4th Cir. 2013) ("The Eleventh Amendment is a matter of jurisdiction, not liability.").

Because the court so concludes, for the same reasons it dismisses the state-law claims against the County Defendants, the court: (1) exercises its discretion under 28 U.S.C. § 1367(c) to decline supplemental jurisdiction over Plaintiffs' remaining state-law claims; and (2) dismisses the purported claim seeking punitive damages from the State Defendants. *See supra* Section III.

### V. Conclusion

For the foregoing reasons, Defendants' motions to dismiss are GRANTED and Plaintiff's claims are DISMISSED *in toto*.

SO ORDERED this the 5th day of March, 2021.

Richard E. Myers II
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE